UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| LORI McCANN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:07-cv-519-SEB-JMS |
| | ) | |
| BRYAN HOOD and WILLIE COLLINS, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on Defendants' Motion for Summary Judgment

[Docket No. 39], filed on May 30, 2008, pursuant to Federal Rule of Civil Procedure 56

and Local Rule 56.1.[1]  Plaintiff, Lori McCann, brings her claim pursuant to 42 U.S.C. §

1983 against Carmel Police Department ("CPD") Officers Bryan Hood and Willie

Collins, alleging that they deprived her of her civil rights when: (1) Officer Hood and

Officer Collins used what she contends was excessive force in arresting her; (2) Officer

Hood allegedly falsified a "book-in slip," police report, and two probable cause affidavits

in order to effect a false arrest and ensure her prosecution; and (3) Officer Collins

allegedly provided false sworn testimony.  Officer Hood and Officer Collins have both

---

[1] Because we are able to decide Defendants' Motion for Summary Judgment without
relying upon Defendants' expert report, we <u>DENY</u> <u>AS</u> <u>MOOT</u> Ms. McCann's motion in limine
to exclude Defendants' expert testimony [Docket No. 50] for purposes of ruling on summary
judgment.

asserted immunity defenses, contending that qualified immunity protects them from any liability stemming from their conduct in the course of Ms. McCann's arrest and that they are protected by absolute immunity with respect to their allegedly false statements made in connection with Ms. McCann's prosecution and trial.  For the reasons detailed in this entry, we <u>GRANT</u> Defendants' Motion for Summary Judgment.


**Factual Background**

On August 14, 2005, at approximately 11:20 p.m., Ms. McCann received a telephone call from her son, Steven McCann ("Steven"), who informed her that he had been involved in a motor vehicle accident.  Ms. McCann drove to the scene of the accident (the intersection of U.S. Highway 31 and Carmel Drive in Carmel, Indiana) and informed the lead investigating officer, Officer Collins, that she was Steven's mother and that Steven was a minor.[2]  At some point after Ms. McCann arrived at the scene, Officer Hood, who was assisting Officer Collins, arrested Steven for driving while intoxicated after performing a field sobriety test on him.[3]  Affidavit of Bryan Hood ("Hood Aff.") ¶¶

---

[2] Officer Collins told Ms. McCann that he wanted to speak with Steven alone.  He then proceeded to interrogate Steven outside of Ms. McCann's presence and without first obtaining her consent to do so.  Officer Collins later testified that he knew such conduct violated Indiana law.  Trial Transcript at 104-107.

[3] After placing Steven under arrest, Officer Hood activated the video camera and audio recording system mounted on the dashboard of his police car by pressing a button on the wireless remote control/microphone unit on his belt.  Hood Aff. ¶ 8.  However, the dashboard video camera faces straight ahead and only captures video through the windshield.  Thus, because the events related to this litigation all took place on the passenger's side of Officer Hood's car, the

(continued...)

5-7.   After placing Steven under arrest, Officer Hood conducted a search of Steven

incident to the arrest. Id. ¶ 9.  Ms. McCann was present and observed Officer Hood's

arrest and subsequent search of Steven from a few feet away.  Id. ¶ 11.  During Officer

Hood's search of Steven, he (Officer Hood) removed several items from Steven's pocket,

including a Zippo lighter case, which Officer Hood held in his hand to inspect.  Id. ¶¶ 12-

13.  At this point, however, the parties' stories diverge.


**Defendants' Account**

According to Officer Hood, a few seconds after he had removed the Zippo lighter

case from Steven's pocket, Ms. McCann, "lunged toward [Officer Hood] and seized the

case from [his] hand [and] then turned as if to walk away with the lighter case."  Id. ¶¶

15-16.  Officer Hood contends that he immediately grabbed Ms. McCann by the arm to

prevent her from fleeing with the lighter case and, because he had used his only pair of

handcuffs to restrain Steven, Officer Hood then radioed for Officer Collins to assist him

in apprehending Ms. McCann.  Id. ¶¶ 17-18.  Officer Collins, who was approximately

twenty-five to thirty feet away investigating the traffic accident at the time, responded to

the call and gave his handcuffs to Officer Hood, who used them to restrain Ms. McCann.

Id. ¶¶ 18-20.  Officer Collins testified that at the time he was assisting Officer Hood in

---

[3](...continued)
dashboard camera did not record the events on video, but the microphone on Officer Hood's belt
did record the audio portion of the incidents.  Id. ¶ 10, 21.

handcuffing Ms. McCann, "she was still struggling with [Officer Hood], being disorderly and just actually pulling away from Officer Hood, being non-compliant."  Trial Transcript[4] ("Trial Trans.") at 98.

After she was handcuffed, Ms. McCann apologized to Officer Hood for taking the lighter case, stating that she "didn't know better."  Hood Aff. ¶ 19.  Throughout the time period in which these events transpired, Officer Hood concedes that he did not issue Ms. McCann any commands; (for example, he never told her to stop, never told her that she was under arrest or explained the reason she was under arrest).  Trial Trans. at 147.  At some point after Ms. McCann had been restrained, Officer Hood asked Ms. McCann if her handcuffs were too tight and she responded, "Little bit."  Hood Aff. ¶ 24.  Officer Hood loosened her handcuffs and Ms. McCann made no further complaint or comment about the handcuffs for the duration of the night.  Id.  Officer Hood later drove Ms. McCann from the scene in Carmel to the Hamilton County Jail located in Noblesville, Indiana.  Id. ¶ 22.  When they arrived at the jail, Officer Hood was required to complete a "book-in slip," identifying the preliminary charges against Ms. McCann.  Officer Hood contends that, to ensure he listed the appropriate charges, he telephoned the on-call deputy prosecuting attorney to ask for her advice.  Based on that advice, Officer Hood listed the preliminary charges of Resisting Law Enforcement and Battery.  Id. ¶¶ 25-27.

---

[4] "Trial Transcript" refers to the transcript of Ms. McCann's June 1, 2006, trial for battery and resisting law enforcement.  Ms. McCann was found not guilty on both charges.

**Plaintiff's Account**

Ms. McCann's account of these events differs slightly from that of Officer Hood and Officer Collins.  She contends that, throughout his search of Steven, Officer Hood had both hands inside the waistband of Steven's underwear and was touching Steven's genitals, despite both Steven's and her protests.[5]  Compl. ¶ 20; Trial Trans. at 180-81. According to Ms. McCann, when he removed the Zippo lighter case from Steven's pocket, Officer Hood still had one hand inside Steven's underwear.  Ms. McCann admits that she "swiped" the Zippo lighter from Officer Hood's hand so as to get his attention and make him remove his other hand from inside Steven's underwear, (Lori McCann Deposition ("McCann Dep.") at 58, 69-70), but contends that she never touched Officer Hood's hand, either intentionally or accidentally, when she grabbed the Zippo case from him.  Trial Trans. at 182-183.

Immediately after she took the Zippo container, Officer Hood grabbed Ms. McCann and forced her arm behind her back, positioning her so that she was "bent over and knees crouched."  McCann Dep. at 75.  At trial, Ms. McCann testified that, as soon as Officer Hood detained her, "I was like pleading.  I was like please, here, here, I was scared you know.  Take it, take it and he wouldn't take it."  Trial Trans. at 183.  At that point, Officer Hood requested assistance from Officer Collins in order to restrain Ms.

---

[5] In his deposition, Officer Hood testified that, although he thought he would have been justified in performing such a search, he did not put his hands inside Steven's pants while searching him incident to arrest.  Deposition of Bryan Hood ("Hood Dep.") at 43.

McCann.  According to Ms. McCann, she never pulled back, moved away, or used any other kind of force against Officer Hood or Officer Collins while she was being handcuffed.[6]  Id. at 184, 189-90.  Ms. McCann contends that, as these events transpired, neither Officer Hood nor Officer Collins issued any commands to her or told her that she was under arrest.  Id. at 189-90.  At some point after she was handcuffed, Officer Hood stated, "Ma'am, I hope you realize that you're going to jail because you grabbed an empty Zippo lighter out of my hand."  Trial Trans. at 152.  Officer Hood did not mention charges of battery or resisting law enforcement at that time and he did not inform Ms. McCann of the specific charges against her until he consulted with the on-call prosecuting attorney upon arrival at the jail.

In his arrest report and probable cause affidavits, which he completed after speaking with the prosecuting attorney, Officer Hood stated that Ms. McCann "struck" his hand before she grabbed the Zippo container from him, as if she was trying to make him drop the lighter.  Additionally, he reported that Ms. McCann had tried to pull away when he grabbed her arm and that she struggled with him until Officer Collins assisted him in subduing her.  See Exh. 4 (Arrest Report); Exh. 5 (Probable Cause Aff. for Resisting); Exh. 6 (Probable Cause Aff. for Battery).  However, at various times while at the scene of the arrest, Officer Hood spoke with a number of individuals, including his

_____

[6] A witness, Deborah Jones, testified that, when Ms. McCann was handcuffed, she was not pulling away from the officers or resisting them in any other way.  Trial Trans. at 219.  It is unclear whether Ms. Jones witnessed the events that transpired before Ms. McCann was restrained in handcuffs.

supervisor, a few firemen, and a probation officer, and never mentioned that Ms. McCann had slapped his hand, battered him, pulled away from him, or resisted arrest.  Trial Trans. at 154-157.  At the scene, he stated only that Ms. McCann had grabbed the Zippo lighter from his hand and that he was going to charge her with "interfering, disorderly conduct, whatever."  Trial Trans. at 157.

**Internal Affairs Investigation**

Following Ms. McCann's pre-suit complaints about her arrest, Carmel Police Chief Michael Fogarty commissioned an internal affairs investigation into Officer Hood's conduct in connection with the arrest.  According to Officer Hood, Lt. Joseph Bickel and Major Goodman conducted the investigation and concluded that his (Officer Hood's) conduct was appropriate.  Officer Hood contends that he was not disciplined in any way in connection with his arrest of Ms. McCann.  Hood Aff. ¶¶ 31-33.  However, Ms. McCann contends that, after her acquittal on the charges of battery and resisting law enforcement, Chief Fogarty informed her that Major Goodman had reviewed the circumstances of her arrest and had concluded that Officer Hood overreacted and did not conduct himself according to protocol and standard operating procedures.  McCann Dep. at 140-41.

**The Instant Litigation**

On April 25, 2007, Ms. McCann filed her Complaint in this action.  Although not

completely clear from her Complaint,[7] it appears from her subsequent briefing that Ms.

McCann alleges that she was deprived her of her civil rights when: (1) Officer Hood and

Officer Collins used what she contends was excessive force in arresting her; (2) Officer

Hood allegedly arrested her without probable cause and then falsified a "book-in slip,"

police report, and two probable cause affidavits in order to ensure her prosecution; and

(3) Officer Collins allegedly provided false sworn deposition testimony.  Defendants have

moved for summary judgment on all of Plaintiff's claims.

## **Legal Analysis**

## I.    **Standard of Review**

Summary judgment is appropriate when the record shows that there is "no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  Fed. R. Civ. P. 56(c); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

Disputes concerning material facts are genuine where the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  <u>Anderson v. Liberty</u>

<u>Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  In deciding whether genuine issues of material

fact exist, the court construes all facts in a light most favorable to the non-moving party

and draws all reasonable inferences in favor of the non-moving party.  <u>See</u> <u>id.</u> at 255.

_____

[7] In her Complaint, Ms. McCann merely alleged that Officer Hood and Officer Collins had "deprived Ms. McCann of her rights guaranteed under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution."  Compl. ¶ 43.

However, neither the "mere existence of some alleged factual dispute between the parties," id., 477 U.S. at 247, nor the existence of "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), will defeat a motion for summary judgment.  Michas v. Health Cost Controls of Ill., Inc., 209 F.3d 687, 692 (7th Cir. 2000).

Summary judgment is not a substitute for a trial on the merits nor is it a vehicle for resolving factual disputes.  Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994).  Therefore, after drawing all reasonable inferences from the facts in favor of the non-movant, if genuine doubts remain and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate.  See Shields Enterprises, Inc. v. First Chicago Corp., 975 F.2d 1290, 1294 (7th Cir. 1992); Wolf v. City of Fitchburg, 870 F.2d 1327, 1330 (7th Cir. 1989).  But, if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his or her case, summary judgment is not only appropriate, but mandated.  See Celotex, 477 U.S. at 322; Ziliak v. AstraZeneca LP, 324 F.3d 518, 520 (7th Cir. 2003).   A failure to prove one essential element "necessarily renders all other facts immaterial."  Celotex, 477 U.S. at 323.

The party seeking summary judgment on a claim on which the non-moving party bears the burden of proof at trial may discharge its burden by showing an absence of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  A plaintiff's self-serving statements, which are speculative or which lack a foundation of personal knowledge, and which are unsupported by specific concrete facts reflected in the record,

cannot preclude summary judgment.  Albiero v. City of Kankakee, 246 F.3d 927, 933 (7th

Cir. 2001); Stagman v. Ryan, 176 F.3d 986, 995 (7th Cir. 1999); Slowiak v. Land

O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993).


**II.     Section 1983 Claims**

Ms. McCann brings her federal claims under 42 U.S.C. § 1983, which provides in

relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom,
> or usage, of any State or Territory or the District of Columbia, subjects, or
> causes to be subjected, any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to the party
> injured.

Thus, to recover under § 1983, Ms. McCann must establish that she was deprived

of a right secured by the Constitution or laws of the United States by a person acting

under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).  Ms. McCann's core

federal claims are that, while acting as employees of the City of Carmel, Officer Hood

and Officer Collins used excessive force in arresting her, that Office Hood falsely arrested

her and then falsified a police report and two probable cause affidavits in order to procure

criminal charges against her, and that Officer Collins caused the continuation of the

prosecution against her by providing false sworn testimony in a pretrial deposition, all in

violation of the Fourth Amendment.

Officer Hood and Officer Collins rejoin that they are entitled to qualified immunity

from Ms. McCann's claims that her civil rights were violated in connection with her arrest because their conduct did not violate "clearly established statutory or constitutional rights of which a reasonable person should have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). With respect to Ms. McCann's claims relating to their allegedly false statements made in connection with Ms. McCann's prosecution and trial, Officer Hood and Officer Collins contend that they are protected from suit by absolute immunity. We address each of these claims and defenses in turn.

### A.      Qualified Immunity Framework

The doctrine of qualified immunity shields from civil liability a public official who can demonstrate "that he was performing a discretionary function and that a reasonable law enforcement officer would have believed that, at the time he acted, his actions were within the bounds of the law." <u>Belcher v. Norton</u>, 497 F.3d 742, 749 (7th Cir. 2007) (citing <u>Harlow</u>, 457 U.S. at 818). In other words, the doctrine of qualified immunity protects from liability police officers "who act in ways they reasonably believe to be lawful," <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987), and protects all but the "plainly incompetent or those who knowingly violate the law." <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (quoting <u>Malley v. Briggs</u>, 475 U.S. 335, 343 (1986)).

The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether that constitutional right

11

was clearly established at the time of the alleged violation. <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).[8]  Although qualified immunity is an affirmative defense, once it is raised, it becomes the plaintiff's burden to defeat it.  <u>Jewett v. Anders</u>, 521 F.3d 818, 823 (citations omitted).  Thus, "if the plaintiff cannot establish that the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right – the first step in the <u>Saucier</u> analysis – our inquiry ends, and summary judgment for the defendant is appropriate."  <u>Id.</u>  However, if the plaintiff is able to meet his or her burden on the first prong of the test, the plaintiff may then demonstrate that that constitutional right was clearly established by showing that there is "a clearly analogous case establishing a right to be free from the specific conduct at issue" or that "the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights."  <u>Chelios v. Heavener</u>, 520 F.3d 678, 691 (7th Cir. 2008) (citing <u>Smith v. City of Chicago</u>, 242 F.3d 737, 742 (7th Cir. 2001); (<u>Saffell v. Crews</u>, 183 F.3d 655, 658 (7th Cir. 1999)).

### 1.    Excessive Force

Ms. McCann first contends that Officer Hood and Officer Collins used excessive force in effectuating her arrest.  Excessive force claims are analyzed under the Fourth

---

[8] The Supreme Court recently revisited <u>Saucier</u> and held that "[b]ecause the two-step <u>Saucier</u> procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking will best facilitate the fair and efficient disposition of each case."  <u>Pearson v. Callahan</u>, No. 07-751, slip op. at 17, 555 U.S. ___ (Jan. 21, 2009).

Amendment reasonableness standard, which is "judged from the perspective of a reasonable officer on the scene."  Abdullahi v. City of Madison, 423 F.3d 763, 768 (7th Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)).  Because the Fourth Amendment test is an objective one, "the officer's subjective good or bad intentions do not enter into the analysis."  Jacobs v. City of Chicago, 215 F.3d 758, 773 (7th Cir. 2000). In order to decide whether the amount of force used during a seizure is "excessive," the court must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Morfin v. City of E. Chicago, 349 F.3d 989, 1004 (7th Cir.2003) (quoting Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

Proper balancing "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 1004-05 (citing Bell v. Wolfish, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)).  In determining objective reasonableness, the court also considers whether the suspect "was interfering or attempting to interfere with the officer's execution of his or her duties." Jacobs, 215 F.3d at 773 (citing McDonald v. Haskins, 966 F.2d 292, 292-93 (7th Cir. 1992)).

In this case, neither Officer Hood nor Officer Collins disputes Ms. McCann's account of the amount of force used in effectuating her arrest.  All parties agree that, immediately after Ms. McCann took the Zippo lighter from Officer Hood's hand, Officer

13

Hood grabbed Ms. McCann, forced her arm behind her back, and bent her over toward the ground.  McCann Dep. at 75.  Although in the briefing on this motion, Ms. McCann's attorney repeatedly represents that the officers "forced her to the ground," (Pl.'s Resp. at 14), Ms. McCann was very clear in her deposition that she was "[n]ot hitting the pavement," but that she was instead merely "bent over and knees crouched."  McCann Dep. at 75.  Officer Collins, in response to Officer Hood's request for assistance, aided Officer Hood in handcuffing Ms. McCann by taking ahold of her other arm and pulling it behind her back.  Ms. McCann remained in handcuffs for approximately twenty-five minutes before she was transported to jail.  During that time, she complained about the tightness of the handcuffs prompting Officer Hood to loosen them, after which Ms. McCann made no further complaints.  See Exh. A-1 (Police Car Camera DVD).  Ms. McCann's wrists were bruised as a result of being handcuffed, but she did not seek medical attention for her injuries.

As discussed above, in order to rebut the officers' claim of qualified immunity, Ms. McCann may either: (1) point to a closely analogous case that established a right to be free from the type of force the police officers used on her, or (2) show that the force was so plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment.  Chelios, 520 F.3d 678, 691 (7th Cir. 2008).  Here, Ms. McCann has not put forth a case so closely analogous to hers that it alone rebuts the qualified immunity defense.  Therefore, Ms. McCann must demonstrate that the force that was used by the officers in effectuating her arrest was so

plainly excessive that a reasonable police officer would have been on notice that such force is violative of the Fourth Amendment.

Because determining whether the use of force in a particular case is "plainly excessive" requires a fact-specific inquiry, "if the facts draw into question the objective reasonableness of the police action under the alleged circumstances, they must be developed in the district court before a definitive ruling on the defense can be made." Id. at 692 (quoting Clash v. Beatty, 77 F.3d 1045, 1048 (7th Cir. 1998)).  While the parties here agree on the amount of force used to effectuate Ms. McCann's arrest, they disagree about the events leading up to the use of force, in particular, whether Ms. McCann was actively resisting and pulling away from the officers while she was being handcuffed. However, these factual disputes do not preclude the Court from resolving this issue at the summary judgment stage because, even assuming as we are required to do, that Ms. McCann's version of those events is true, to wit, that she was not actively resisting arrest or attempting to flee, we are unable to find that the force used against her was excessive under the circumstances.

Ms. McCann admits that she snatched a piece of evidence from Officer Hood's hand while he was conducting a search incident to arrest of Steven McCann, which action precipitated her arrest.  Although in hindsight it appears that Ms. McCann may not have posed an immediate threat to the officers, the reasonableness standard recognizes that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in

a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989).  In light of Ms. McCann's undisputed interference with Officer Hood's search of her son and her admitted act of grabbing a piece of evidence out of Officer Hood's hand, we hold that no jury could find that the relatively mild actions taken by Officer Hood and Officer Collins – grabbing Ms. McCann's arms and putting them behind her back, bending her forward, and handcuffing her – were excessive under the circumstances.  See Covington v. Smith, 2008 WL 83843, 259 Fed. Appx. 871 (7th Cir. 2008) (affirming summary judgment for defendants on excessive force claim where officers handcuffed, lifted off the ground, and threw a man into a chair who resisted the officers when they entered his home to look for his son).  Accordingly, we GRANT Defendants' Motion for Summary Judgment on Plaintiff's excessive force claim.

### 2.    Arrest Without Probable Cause

Ms. McCann next contends that Officer Hood arrested her without probable cause, in violation of the Fourth Amendment.  Obviously, as Ms. McCann claims, it was clearly established, at the time that she was arrested, that arrest without probable cause violates the Fourth Amendment.  See, e.g., Driebel v. City of Milwaukee, 298 F.3d 622, 652 (7th Cir. 2002) ("[I]nnumerable decisions . . . have clearly established the right to be free from arrest without probable cause.").  However, "[p]robable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers."  Chelios v. Heavener, 520 F.3d 678, 685 (7th Cir. 2008) (citing Wagner v. Washington County, 493

16

F.3d 833, 836 (7th Cir. 2007) (per curium); Potts v. City of Lafayette, 121 F.3d 1106, 1113 (7th Cir. 1997)).  Thus, "when a defense of qualified immunity has been raised to an unlawful arrest claim, the court must determine 'if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed.'"  Huber v. Reagan, 2000 WL 684231, at *6 (S.D. Ind. 2000) (Hamilton, J.) (quoting Humphrey v. Staszak, 148 F.3d 719, 725 (7th Cir. 1998)).

Probable cause to arrest exists "if, at the time of the arrest, the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'"  Wagner, 493 F.3d at 836 (quoting Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (alteration in original)).  The court "evaluates probable cause 'not on the facts as an omniscient observer would perceive them,' but rather 'as they would have appeared to a reasonable person in the position of the arresting officer.'"  Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 1993) (quoting Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998)).

Here, Ms. McCann contends that Officer Hood did not have probable cause to arrest her for either battery or resisting law enforcement, the two crimes for which she was eventually charged and prosecuted.[9]  She claims that the only reason Officer Hood

---

[9] Defendants rejoin that Ms. McCann is precluded by the doctrine of collateral estoppel

(continued...)

arrested her was to justify his own misconduct and that it was only after he had spoken with the prosecutor and had been advised about the necessary elements for charges of battery and resisting law enforcement that he embellished the facts in order to create probable cause after the fact.

It is well established that "the officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). Thus, the court does not consider the arresting officer's subjective reasons for making the arrest when determining whether there was probable cause for the arrest. Holmes v. Village of Hoffman Estate, 511 F.3d 673, 679 (7th Cir. 2007). Additionally, under Seventh Circuit law, "Probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." Id. at 682 (citations omitted). Therefore, even if we determine that Officer Hood did not have probable cause to arrest Ms. McCann for one, or even either, of the crimes with which she was charged, he is still entitled to summary judgment on Ms. McCann's false arrest claim if we find that he had probable cause to believe that Ms. McCann had committed any

---

[9](...continued)
from arguing that Officer Hood did not have probable cause to arrest her because the trial judge in the criminal case against her denied her motion for judgment on the evidence at the close of the prosecution's case, concluding that the State had presented sufficient evidence to establish a prima facie case as to both charges. However, as Ms. McCann correctly contends, a judicial officer's finding of probable cause is not dispositive in a subsequent civil action against the police officer. See Simmons v. Pryor, 26 F.3d 650, 653 (7th Cir. 1993). Therefore, we must and do make our own determination on the probable cause question.

other crime.

### a.      Probable Cause to Arrest for Battery

"Whether an officer has probable cause to arrest depends on the requirements of the applicable state criminal law." Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 761 (7th Cir. 2006) (citing Williams v. Jaglowski, 269 F.3d 778, 782 (7th Cir. 2001)).  Under Indiana law, "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner, commits battery."  Ind. Code § 35-42-2-1.  Any touching, regardless of how slight, may constitute battery.  Impson v. State, 721 N.E.2d 1275, 1285 (Ind. Ct. App. 2000). In fact, Indiana courts have found that a person may commit the "touching" necessary for battery by touching another's apparel or eyeglasses, as such items are "so intimately connected with the person that it is regarded as part of the person for purposes of the battery statute."  Id.; accord Stokes v. State, 115 N.E.2d 442, 443 (Ind. 1953), reh'g denied, 116 N.E.2d 296.  The parties here dispute whether Ms. McCann at any point made physical contact with Officer Hood.  However, because Ms. McCann concedes that, when she approached Officer Hood and grabbed the Zippo lighter, he was holding it in his hand, we find that a reasonable officer could have believed that, at that time, it was as intimately connected with his person as the eyeglasses or apparel in Impson and Stokes and thus constituted "touching" as defined under the battery statute.

Additionally, Ms. McCann admits that, when she took the Zippo lighter from Officer Hood's hand, she was upset because she believed that Officer Hood was improperly

searching her son.  That admission, in conjunction with Officer Hood's audio recording of

the incident, on which Ms. McCann can be heard yelling at the time she took the lighter, is

sufficient undisputed evidence from which to conclude that Officer Hood believed Ms.

McCann acted in a "rude, insolent, or angry manner" toward him in snatching the lighter

from his hand.  Accordingly, we find that Officer Hood had probable cause to believe that

Ms. McCann's act of taking the Zippo lighter from his hand violated the battery statute under

Indiana law.

### b.   Probable Cause to Arrest for Interfering with Law Enforcement

We next examine whether Officer Hood had probable cause to arrest Ms. McCann

for resisting law enforcement.  Under Indiana law, an individual resists law enforcement

when that individual "knowingly or intentionally: (1) forcibly resists, obstructs, or

interferes with a law enforcement officer or a person assisting the officer while the officer

is lawfully engaged in the execution of the officer's duties."  Ind. Code § 35-44-3-3.  Ms.

McCann first contends that there was no probable cause for Officer Hood to have

believed that she had resisted law enforcement because she did not use any "force" as

required by the statute.

In the context of the statute, an individual uses "force" to interfere when the person

"directs strength, power, or violence toward police officers, or when he or she makes a

threatening gesture or movement in their direction."  Briggs v. State, 873 N.E.2d 129, 136

20

(Ind. Ct. App. 2007) (citing Wellman v. State, 703 N.E.2d 1061 (Ind. Ct. App. 1998)).

Here, Ms. McCann admittedly approached Officer Hood and physically intervened in his

search of Steven by grabbing the Zippo lighter out of Officer Hood's hand.  Thus, the

forcefulness of Ms. McCann's interference was clearly more than mere passive

resistance.  In light of those actions, we conclude that Ms. McCann "forcibly interfered"

with Officer Hood as that term has been defined by Indiana courts.

In the alternative, Ms. McCann argues that there was no probable cause for her

arrest for interfering with law enforcement because, when she took the Zippo lighter from

Officer Hood's hand, he was allegedly improperly touching Steven's genitals while

searching him.  Thus, Ms. McCann contends that, at the time that she interfered, Officer

Hood was not "lawfully engaged" in his duties as required by the statute.  We disagree.

Although Ms. McCann's perception of the situation was that Officer Hood was not

properly conducting the search of Steven,[10] at the time that Ms. McCann took the Zippo

lighter from out of Officer Hood's hand, Steven was under arrest and Officer Hood was

lawfully engaged in his duties conducting a valid search incident to arrest.  See, e.g., U.S.

---

[10] Even if the search were unlawful, under Indiana law, "a private citizen may not use force in resisting a peaceful arrest by an individual [whom she] knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful."  Alspach v. State, 755 N.E. 2d 209, 211 (Ind. Ct. App. 2001) (quoting Shoultz v. State, 735 N.E.2d 818, 823 (Ind. Ct. App. 2000)).  Indiana courts recognize an exception to this rule where the *means used* to effect the arrest were unlawful, as opposed to the unlawfulness having arisen from insufficient grounds to arrest.  Id.  However, "citizens may not ignore the general rule even when they believe that police are conducting an unlawful search of their person during an investigatory stop."  Knight v. Thomas, 2008 WL 1957905, at *8 (N.D. Ind. May 2, 2008) (holding that the officer's search of the plaintiff did not have to be lawful in order to find that he resisted law enforcement in violation of Indiana law).

21

v. Veras, 51 F.3d 1365, 1371 (7th Cir. 1995) ("A search performed incident to arrest . . . is one of the well-established exceptions to warrantless searches.").  Therefore, we find that Officer Hood had probable cause to arrest Ms. McCann for interfering with law enforcement.  Accordingly, we <u>GRANT</u> Defendants' Motion for Summary Judgment on Plaintiff's false arrest claim.


### 3.   Alleged Falsification of Arrest Report and Probable Cause Affidavit

Ms. McCann also claims that Officer Hood violated her constitutional rights when he allegedly falsified information on his arrest report and probable cause affidavit.  It is unclear from her complaint exactly which claims she intended to bring against Officer Hood for these actions.  In her complaint, she merely claims that: "Officer Hood's . . . actions deprived Mrs. McCann of her rights guaranteed under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution."  Compl. ¶ 43.  However, based on the case citations and minimal argument included in her briefing, it appears that she is contending that, in addition to arresting her without probable cause, Officer Hood then procured her prosecution by including allegedly false statements in his police report and probable cause affidavit.  Thus, we construe her theory to be that Officer Hood's behavior constituted malicious prosecution, in violation of the Fourth Amendment.[11]

---

[11] In the section of her brief addressing Officer Hood's alleged falsification of the arrest report and probable cause affidavit, among other cases, Ms. McCann cites to the Seventh

(continued...)

We need not engage in a detailed analysis of this claim, however.  To prevail on a malicious prosecution claim, a plaintiff must show, *inter alia*, that the criminal action was begun without probable cause for charging the crime in the first place.  Curtis v. Bembenek, 48 F.3d 281, 286 (7th Cir. 1995).  Because, for the reasons detailed above, we find that Officer Hood had probable cause to arrest Ms. McCann for the crimes with which she was charged, she is unable to meet that element.  Thus, we GRANT Defendants' Motion for Summary Judgment as to Ms. McCann's claim that Officer Hood falsified various documents in connection with her arrest and prosecution.[12]

---

[11](...continued)
Circuit's decision in Manning v. Miller, 355 F.3d 1028 (7th Cir. 2004), for the proposition that "[p]olice falsification of evidence in order to obtain charges clearly constitutes a section 1983 violation."  Pl.'s Resp. at 11.  In Manning, the court found that evidence that federal investigators had withheld exculpatory evidence and falsified reports that contributed to the plaintiff's conviction was sufficient to present a due process claim pursuant to Brady v. Maryland, 373 U.S. 83 (1963).

Putting aside the issue of whether a Brady claim is extinguished when a defendant is acquitted or charges are dropped (Ms. McCann was acquitted of the charges against her; the plaintiff in Manning was not), Ms. McCann did nothing more to develop her argument than merely cite Manning.  In fact, she did not even mention Brady or the due process clause anywhere in her brief.  Thus, we need not pursue this skeletal line of argument.  See Argyropoulos v. City of Alton, 539 F.3d 724, 741 n.10 (7th Cir. 2008) (finding that the fact that the plaintiff "might have had a colorable argument did not relieve her of a litigant's obligation to develop it.").  Therefore, we proceed solely with the Fourth Amendment malicious prosecution analysis.

[12] Even if we had found that Officer Hood did not have probable cause to arrest Ms. McCann for one or both of the crimes with which she was charged and she had later prevailed on her malicious prosecution claim at trial, no more than a nominal victory would have resulted.  Under Seventh Circuit law, a malicious prosecution claim brought pursuant to the Fourth Amendment protects against damages suffered only until arraignment.  McCullah v. Gadert, 344 F.3d 655, 660-661 (7th Cir. 2003); see also Overton v. Hicks, 2008 WL 2518229, at *11 (S.D. Ind. June 17, 2008) (Hamilton, J.) (tracing the history of federal malicious prosecution claims).  After arraignment, a plaintiff must assert a procedural due process claim to protect against later
(continued...)

**B.      Absolute Immunity for Allegedly Perjured Deposition Testimony**

Ms. McCann also contends that her civil rights were violated when Officer Collins allegedly caused the continuation of the prosecution against her by providing false sworn testimony in his deposition.  It is well-established that witnesses who allegedly give perjured testimony at a criminal trial are absolutely immune from later suit under 42 U.S.C. § 1983.  Briscoe v. LaHue, 460 U.S. 325, 333 (1983).  Under Seventh Circuit law, absolute immunity extends to a police officer's participation in pretrial proceedings, such as grand jury testimony and preliminary hearings.  Curtis v. Bembenek, 48 F.3d 281, 284 (7th Cir. 1995).  The Seventh Circuit has explained: "Whether testifying at trial or in a pretrial proceeding, a witness who knows he may be subjected to costly and time-consuming civil litigation for offering testimony that he is unable to substantiate may consciously or otherwise shade his testimony in such a way as to limit potential liability. Because of such tendencies to shade testimony, witness immunity is accorded full disclosure as a means of ascertaining the truth." Id. at 285 (quoting Holt v. Castenada, 832 F.2d 123, 125 (9th Cir. 1987)) (citations omitted).

Nevertheless, Ms. McCann contends that there is no support for the proposition

---

[12](...continued)
harms stemming from the malicious prosecution.  See Wallace v. Kato, 549 U.S. 384, 389-90 (2007); Jones v. City of Chicago, 856 F.2d 985, 994 (7th Cir. 1998).  Because Ms. McCann did not elucidate a procedural due process argument, should she have prevailed on liability, her damages would have been limited under the Fourth Amendment only to those sustained up to the point of her arraignment.

24

that absolute immunity applies to allegedly perjured testimony given in a deposition.  We

disagree.  As the Seventh Circuit has recognized, "The threat of a lawsuit for damages

can have the same intimidating effect on a witness who testifies by deposition as one who

testifies in court.  Testimony by deposition is an important part of the judicial process and

merits the same protection as in-court testimony."  Giffin v. Summerlin, 78 F.3d 1227,

1231 (7th Cir. 1996) (applying Indiana law and holding that it would apply the Briscoe

rule to depositions as well).  In light of this precedent, we conclude that absolute

immunity may extend to protect witnesses from suit based upon allegedly false deposition

testimony.

However, the Seventh Circuit has recognized that an "exception to this wall of

immunity for trial and pretrial testimony exists for a 'complaining witness.'"  Cervantes v.

Jones, 188 F.3d 805, 809-10 (7th Cir. 1999), rev'd on other grounds, Newsome v.

McCabe, 256 F.3d 747, 752 (7th Cir. 2001).  To be considered a complaining witness

(and thereby be disqualified from absolute immunity), the witness "must play a sufficient

role in initiating the prosecution," which requires that the witness "actively instigated or

encouraged the prosecution of the plaintiff."  Id. at 810.  The issue of whether a witness is

a complaining witness is a question of fact that the court can determine at summary

judgment.  Johnson v. Saville, 2008 WL 4619782, at *4-5 (N.D. Ill. October 17, 2008).

Here, there is no evidence that Officer Collins prepared any reports for or even

talked to the prosecutor, much less that he pressured the prosecutor to pursue criminal

charges against Ms. McCann.  Thus, no issue of material fact exists regarding whether

25

Officer Collins actively initiated or encouraged Ms. McCann's prosecution.  Accordingly, we hold that Officer Collins is entitled to absolute immunity under <u>Briscoe</u> and its progeny for his deposition testimony.  Thus, we <u>GRANT</u> Defendants' Motion for Summary Judgment as to Ms. McCann's claim that Officer Collins deprived her of her civil rights by allegedly providing false sworn testimony.

## III.   Conclusion

For the foregoing reasons, we <u>GRANT</u> Defendants' Motion for Summary Judgment.  We also <u>DENY</u> <u>AS</u> <u>MOOT</u> Plaintiff's motion to exclude Defendants' expert testimony.  Final judgment will be entered accordingly.

IT IS SO ORDERED.

Date: _02/03/2009_____

_Sarah Evans Barker_

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

Fred Anthony Paganelli
TAFT STETTINIUS & HOLLISTER LLP
paganelli@taftlaw.com